UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIONYSOS SOUBASIS, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 4:11-CV-1365 (CEJ) |
| JEFF NORMAN, | ) |
| Respondent. | ) |

## **MEMORANDUM**

This matter is before the Court on the petition of Dionysos Soubasis for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Respondent has filed a response in opposition, and the issues are fully briefed.

### I.   **Procedural Background**

Petitioner is currently incarcerated in the Southeast Correctional Center pursuant to the sentence and judgment of the Circuit Court of St. Charles County, Missouri. On August 17, 2005, a jury found petitioner guilty of trafficking methamphetamine in the first degree, in violation of Mo. Rev. Stat. §195.222 (Count I).[1] Resp. Ex. A. On October 7, 2005, petitioner was sentenced to a 30-year term of imprisonment without the possibility of parole. Id. The Missouri Court of Appeals affirmed the judgment on June 5, 2007. Resp. Ex. E.  On October 9, 2007, petitioner, through counsel, filed an amended motion for post-conviction relief under Missouri Supreme Court Rule 29.15. Resp. Ex. H at 15. An evidentiary hearing was held on October 20, 2009, and the motion was denied on November 20, 2009. Resp. Ex. F; Resp. Ex. H at 30. On February 22, 2011, the Missouri Court of Appeals affirmed. Resp. Ex. K.

---

[1] The prosecution dismissed Count II at the close of the state's evidence

In the instant § 2254 petition, petitioner asserts four grounds for relief: (1) that his right to due process was violated by the admission of State's Exhibit 7 without proof of a valid chain of custody; (2) that the trial court erred in delivering a certain portion of the jury instructions in the disjunctive; (3) that the evidence was insufficient to support the verdict; and (4) that his trial counsel was ineffective for failing to investigate and call an alibi witness, Rachel Toner.

## II.  Factual Background

On October 7, 2004, Amy Brown and petitioner were occupants in Room 324 at the Best Western hotel in St. Charles, Missouri. Melvin Lindsay, the supervisor of housekeeping at the hotel, saw petitioner entering and leaving that room. On October 8, the hotel relocated Brown and petitioner to Room 319.

While cleaning Room 324, hotel staff discovered suspicious items, including rubber gloves and a bag that smelled of ammonia and contained starter fluid cans. The hotel contacted the police, and the responding officers recognized the items as paraphernalia used in the manufacture of methamphetamine. Resp. Ex. A at 147-161. The officers proceeded to Room 319, where they found Brown and noticed a strong odor of ether. Detective Weissenborn also observed a can of salt, a spice grinder, and a zipper cooler containing several jars of liquid substances. He then contacted the police department's drug unit. Id. at 184-192. When Detective Helm of the drug unit examined Room 319, he found empty pseudoephedrine boxes, camp fuel, a spice grinder, a bottle containing sludge, letters addressed to petitioner, and a money transfer receipt with petitioner's name on it. Id. at 194-208. He also found a container with multiple layers of liquid which the prosecution later offered at trial as Exhibit 7.

Meanwhile, Lindsay identified petitioner as one of the occupants of Room 324. Id. at 150-51. Officer Hymes approached petitioner in the hotel parking lot and asked him

for personal identification. Petitioner falsely identified himself as Anthony Soubasis, who is petitioner's brother. In the car where petitioner sat, Officer Hymes observed a can of acetone. The officers patted petitioner down, and found a knife and a driver's license identifying petitioner as Dionysos Soubasis. Petitioner fled, and although the officers gave chase, petitioner escaped. Id. at 175-184.

Petitioner was eventually located, arrested, and interviewed by Detective Helm. Petitioner was given the Miranda warnings and waived his rights to remain silent and to counsel. Petitioner then told Detective Helm that he had helped to purchase some of the items in the room. Although petitioner denied participating in the manufacturing process, he admitted that he knew the items would be used to manufacture methamphetamine. Id. at 213.

Brian Krey, a forensic scientist at the St. Charles County criminalistics laboratory, analyzed the contents of Exhibit 7 and found that it contained methamphetamine. After the liquid evaporated into a powder, Krey tested it and found that it weighed 345.1 grams and that it contained methamphetamine. Id. at 293-95.

### III. Legal Standard

Federal courts may not grant habeas relief on a claim that has been decided on the merits in state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the

Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004) (citing Early v. Packer, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." Id.

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," Payton, 125 S. Ct. at 1439; Williams v. Taylor, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (quoting Williams, 529 U.S. at 410-11).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir.2004). "[T]he prisoner has the burden of rebutting the presumption of correctness by clear and convincing evidence." Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

**IV. Discussion**

  **A. Ground One**

Petitioner argues that his right to due process was violated when the trial court admitted Exhibit 7 - the container of multilayered liquid - over his objection, because the state failed to establish a chain of custody. Specifically, petitioner argues that the state failed to show that the substance tested in the crime laboratory was the same substance seized from the hotel room, and that the substance had not been tampered with prior to testing.

An error of state law is not grounds for federal habeas relief, Wilson v. Corcoran, 131 S.Ct. 13, 16 (2010), and admissibility of evidence is generally a matter of state law. See Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir. 1990) ("The question of whether or not a chain of custody has been shown is one of state law, and state law questions are not very often the basis of constitutional error under habeas review.") (citations omitted). The only question this Court may consider is whether the challenged evidentiary ruling resulted in a constitutional violation. Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). For an evidentiary ruling to result in a denial of due process, the ruling must be "so 'gross,' 'conspicuously prejudicial,' or otherwise of such magnitude that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process." Wood v. Lockhart, 809 F.2d 457, 460 (8th Cir. 1987) (internal citations omitted).

The Missouri Court of Appeals found that the trial court did not abuse its discretion in admitting Exhibit 7. Resp. Ex. E. Under Missouri law, establishing a valid chain of custody does not require "proof of hand-to-hand custody of the evidence, nor proof that eliminates all possibility that the evidence has been disturbed." State v. Link, 25 S.W.3d 136, 146 (Mo. 2000) (en banc), *cert. denied* 121 S.Ct. 634 (2000). Absent a showing of bad faith, ill will, or proof otherwise, a trial court may assume those charged with custody of evidence "properly discharged their duties and that no tampering occurred."

Id. The Missouri Court of Appeals explained that, while Krey (the forensic analyst) did not specifically state that the seal of the evidence bag was intact when he opened the bag to test the evidence, Detective Helm testified that he placed the exhibits in an evidence bag, in an evidence locker, and that the bag had been left intact until opened for trial, with the exception of being opened and resealed by the crime lab. The state court found this testimony sufficient to show a valid chain of custody, and noted that there was absolutely no evidence of bad faith, ill will, or evidence tampering by anyone in law enforcement or at the crime lab. Resp. Ex. E.

Petitioner has failed to demonstrate that there was an actual flaw in the chain of custody, let alone a flaw sufficiently grave to have denied him a fundamentally fair trial or due process of law. As the state court noted, there is simply no evidence of bad faith or misconduct by those charged with custody of the evidence. Accordingly, relief on this ground will be denied.

### B. Ground Two

Petitioner claims that the trial court erred in giving Instruction No. 5 to the jury. The instruction set forth as an element of the offense of trafficking in the first degree "that with the purpose of promoting or furthering the commission of that trafficking in the first degree, the defendant *acted together with or aided* Amy Lynn Brown, in committing that offense…" (emphasis added). Petitioner argues that there was insufficient evidence to support the disjunctive instruction, because there was no evidence that he "acted together" with Brown to manufacture the methamphetamine.

Respondent contends that this claim is procedurally defaulted. Because petitioner's claim is clearly unavailing on the merits, the Court will not address the issue of procedural default. See Nance v. Norris, 392 F.3d 284, 291 (8th Cir. 2004) (allowing

federal habeas courts to bypass a procedural default issue and proceed to the merits when relief is denied).

The Missouri Court of Appeals found that the evidence supported a disjunctive instruction. Resp. Ex. E. Petitioner's admission that he purchased items found in the hotel room knowing that they would be used to manufacture methamphetamine, petitioner's presence in the hotel room with all of the items in plain view and the methamphetamine in the process of being cooked, his false statements about his identity, his possession of weapons, and his flight from the police support the reasonable inference that he participated in the manufacture of methamphetamine. The state court's conclusion that the instruction was supported by the evidence did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1)-(2). Accordingly, petitioner is not entitled to relief on this ground.

### C.     Ground Three

Petitioner argues that the evidence produced at trial was insufficient to support the guilty verdict, because the prosecution failed to establish that Exhibit 7, the jar of multilayered liquid containing methamphetamine, was found in the hotel room or had any other connection to petitioner.

"Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Garrison v. Burt, 637 F.3d 849, 854 (8th Cir. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Under 28 U.S.C. § 2254(d)(1), a federal court may grant relief only if the state court's application of the Jackson sufficiency-of-evidence standard was "both

incorrect and unreasonable." Id. at 855 (quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010)); see also Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir.2007) (recognizing the scope of review of the state court's determination of whether evidence was sufficient is "extremely limited").

Petitioner raised this ground on direct appeal. The Missouri Court of Appeals reasonably applied the Jackson standard and found that, considering Detective Helm's testimony regarding Exhibit 7 in context, the jury could reasonably infer that Exhibit 7 was seized from the hotel room. Resp. Ex. E. First, Detective Weissenborn testified that he saw jars of liquid in the cooler in the hotel room. Then, the prosecutor asked Detective Helm to identify each exhibit seized from hotel room 319: Exhibit 3, the spice grinder; Exhibit 4, the pseudoephedrine boxes; Exhibit 5, aluminum foil; Exhibit 6, a bottle with sludge; Exhibit 7, the container that had multilayered liquid in it; and Exhibit 8, documents addressed to petitioner. Detective Helm answered a series of repetitive questions about each item, and for most items Helm explicitly stated that they were found in the hotel room. However, when referring to Exhibit 7, the prosecutor simply asked, "And did you seize the item yourself?," omitting "from the hotel room" from the question. On cross-examination, defense counsel asked Helm about the items located in the hotel room, and Helm stated that the container with liquid was found in the cooler. The cooler was found in the hotel room.

Considering all of this testimony in context, the state court concluded that there was sufficient evidence from which the jury could infer that Exhibit 7 was seized from the hotel room. The state court's determination was certainly reasonable. Relief on this ground will be denied.

### D. Ground Four

Petitioner claims that his trial counsel was ineffective for failing to investigate and call an alibi witness, Rachel Toner.

In order to state a claim of ineffective assistance of trial counsel, petitioner must meet the Strickland standard: petitioner must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. Strickland, 466 U.S. at 687. To establish prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Federal habeas review of a Strickland claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable - a substantially higher threshold. And because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

Petitioner raised his claim of ineffective assistance in his amended post-conviction motion, and the state court held an evidentiary hearing at which petitioner's trial counsel and Rachel Toner testified.[2] Resp. Ex. F. At the hearing, trial counsel testified that although Toner retained him and paid his legal fees on behalf of petitioner, she never mentioned that she could provide an alibi for petitioner. Counsel also explained that petitioner provided names of potential witnesses, whom counsel tried to locate, but never mentioned Toner. Toner testified that, if she had been called as a witness at

---

[2] The court also took notice of petitioner's post-trial deposition testimony. Resp. Ex. G.

petitioner's trial, she would have told the jury that petitioner remained at her house from October 7 through October 8, and left on October 8 for the Best Western to retrieve some clothing from Amy Brown. She also testified that, although she met with trial counsel and paid his fees on petitioner's behalf, she never told him that she could provide an alibi or any other favorable evidence for petitioner.

The state court concluded that petitioner's trial counsel was a credible witness, but Toner was not, and "[t]he fact that neither [petitioner] nor Ms. Toner bothered to tell [trial counsel] of Ms. Toner's status as a potential witness, suggest [sic] to this Court that this is a recent fabrication." Resp. Ex. H at 32. These credibility determinations were reasonable, and the Court will defer to them as findings of fact.
Ming v. Dormire, No. 4:07-CV-1201 (HEA/TCM), 2010 WL 3613919, at *10 (E.D. Mo. Aug. 9, 2010) (internal citations and quotation marks omitted), *adopted by* 2010 WL 3564700 (E.D. Mo. Sept. 7, 2010) ("The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, and to a state court's findings of fact made in the course of deciding an ineffective assistance of counsel claim.").

Because trial counsel could not be found ineffective for failing to produce undisclosed witnesses, the state court denied petitioner's claim. Resp. Ex. H. The Missouri Court of Appeals affirmed. Resp. Ex. K. This Court concludes that the state court's application of Strickland was reasonable. Because neither petitioner nor Toner told counsel about Toner's the alleged alibi defense, counsel cannot be deemed ineffective for failing to call Toner as a witness. As the Supreme Court noted in Strickland, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." 466 U.S. at 691. In this

case, counsel's conduct was reasonable because petitioner and Toner never informed him about the alleged alibi. Accordingly, petitioner is not entitled to relief upon this ground.

**V.      Conclusion**

For the reasons discussed above, the Court finds that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). Because petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2014.